[No. 27990-4-I.   Division One.   December 30, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. WILBERT V.
FOULKES, *Appellant*.

*Rita Griffith* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Senior Appellate Attorney,* for respondent.

WEBSTER, A.C.J. — Wilbert V. Foulkes appeals his conviction on one count of residential burglary, RCW 9A.52.025. He contends that the trial court erred in ruling that he did not have standing to challenge the voluntariness of his consent to a car search, and in denying his motion to suppress physical evidence. He also asserts that he was denied effective assistance of counsel. Finding no error, we affirm.

## FACTS

On October 5, 1990, police arrested Foulkes after he was caught fleeing the area of a burglary in progress. At the time of the arrest, Foulkes identified himself as William Franklin. While Police Officer Dana Malone was transporting Foulkes to the King County Jail, Detective Rudy Hasenwinkle returned to the area of the arrest and spotted a car that he suspected was related to the burglary for which Foulkes had just been arrested. The car was a tan 1971 Ford LTD with a rear window broken out or open and keys visible on the floor. The car was parked at an odd angle a few blocks away from the site of the burglary. The police determined that the car was registered to Naomi Elkins. Detective Hasenwinkle radioed Officer Malone and asked him to obtain Foulkes's consent to search the car.

Officer Malone questioned Foulkes about the car. Foulkes said that he did not own a car and did not know who owned the car. Officer Malone then asked Foulkes if he would give his consent to search the car. Malone testified Foulkes consented when Malone told him that he would get a search warrant for the car and impound it if Foulkes did not give his consent. Foulkes testified that he initially refused to give his consent, but did so after the officer assured him

that the car would not be impounded and the owner would not have to pay a fee to get it back.

Officer Malone relayed to Detective Hasenwinkle that Foulkes had consented to a search of the car. Detective Hasenwinkle searched the car and found its keys, a gray fanny pack, and a blue Winoka scuba diving knife, all partially hidden under the front seat. He took the fanny pack, which contained a library card issued to Wilbert Foulkes, and put the knife in the trunk of the Ford since the passenger compartment could not be secured. Naomi Elkins, the owner of the Ford LTD, was notified of its location.

Within a couple of days Detective Hasenwinkle learned that Detective Migita was investigating a burglary in which a blue Winoka scuba diving knife had been stolen. Detective Hasenwinkle went to Naomi Elkins's house to search the Ford LTD again. He recovered the blue Winoka knife from the trunk of the car and impounded the car for photographing.

Three weeks prior to Foulkes's arrest, on the morning of September 17, 1990, three individuals in a Federal Way neighborhood witnessed a burglar take several items of property from Ryan Rader's garage, put them into the trunk of a car, and drive off. By the time the neighbors called the police, the burglar was gone. The burglar ransacked Rader's home and stole many items, including a television, VCR, stereo equipment, jewelry, an antique silver set, suitcases, two complete scuba diving systems, and a blue-handled Winoka scuba diving knife. The witnesses described the car as an old, off-white or beige sedan with a large rust spot over the rear window. Later, two of the witnesses were able to identify Foulkes in a photo montage as the man who committed the burglary. All three witnesses identified Naomi Elkins's car as the one that had been used in the Rader burglary.

Foulkes was charged by information with residential burglary in connection with the September 17 burglary. The defense counsel moved to suppress evidence relating to identification of the car and its contents. At the pretrial

suppression hearing, Foulkes testified that he had heard the radio dispatch to Officer Malone identifying the owner of the car as Naomi Elkins and admitted that he knew her. Nevertheless, Foulkes maintained that, at the time of his arrest, he did not know who owned the car, did not drive it to the site of his arrest, and did not know who did. The trial court found that Foulkes did not voluntarily consent to the search of the car. Nevertheless, it denied Foulkes's motion to suppress the evidence on the basis that Foulkes lacked standing to challenge the search because he had no possessory interest in the vehicle or its contents.

The trial court ruled, however, that the State could not mention Foulkes's arrest on October 5 as a burglary suspect.[1] At trial, Detective Hasenwinkle testified that he learned of the Rader burglary from Detective Migita, and that he recovered the Winoka knife and a fanny pack containing Foulkes's library card from Elkins's car. Hasenwinkle could not remember the date of the Rader burglary. After the prosecutor provided the date, Hasenwinkle testified that he searched the car within a day or two "of that particular burglary". After his memory was refreshed, Hasenwinkle agreed that he searched the car about 3 weeks after the Rader burglary. Detective Migita, when asked the location of the burglary he investigated on September 17, gave the address where the car was found and searched. When the prosecutor provided the Rader address and asked if that address helped, Migita responded, "Yes, I was thinking of the last burglary Detective Hasenwinkle was talking about".

The jury found Foulkes guilty as charged.

### DISCUSSION

██ ██ We first decide whether Foulkes established a constitutionally protected expectation of privacy in Elkins's car

---

[1]The State agreed not to seek admission of Foulkes's custodial statement consenting to the search of the car because there was no evidence that Foulkes had been advised of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

and its contents.[2] Fourth Amendment rights are personal rights which may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). A defendant who does not personally claim a legitimate expectation of privacy in the area searched or property seized generally has no standing to challenge the search or seizure. *See State v. Simpson*, 95 Wn.2d 170, 174-75, 622 P.2d 1199 (1980) (citing *United States v. Salvucci*, 448 U.S. 83, 86-87, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980)); *Rakas*, 439 U.S. at 139-40. An individual has a " 'justifiable,' . . . 'reasonable,' or . . . 'legitimate expectation of privacy' " if that individual has manifested an actual, subjective expectation of privacy in the area searched or item seized and society recognizes the individual's expectation of privacy as reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979); *see Simpson*, at 175.

In *Rakas*, police officers pulled over an automobile that they believed was the getaway car for a robbery that had just been reported. The police officers ordered the defendants and two other occupants out of the automobile and searched the interior of the vehicle. They discovered a box of rifle shells in a locked glove compartment and a sawed-off rifle under the front passenger seat. *Rakas*, at 130. The defendants moved to suppress the rifle and shells seized from the automobile, contending that the search violated their Fourth Amendment rights. They stated that they did not own the automobile and were simply passengers, and made no assertion that they owned the rifle or the shells seized. *Rakas*, at 130-31. Based on these facts, the trial court denied the defendants' suppression motion, reasoning that they lacked standing to challenge the search and seizure. The Court affirmed the ruling on the basis that the defendants did not have a legitimate expectation of privacy in the area searched or objects seized. *Rakas*, at 148-50.

---

[2]Foulkes concedes that he is not entitled to assert standing under the "automatic standing" rule, since possession is not an essential element of burglary. *See State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980).

Foulkes's counsel argues that Foulkes had a legitimate expectation of privacy in the car and its contents because he could exclude everyone besides the owner. We find no facts in the record, however, supporting this assertion. Foulkes affirmatively maintained during the suppression hearing and at trial that he did not own the car, did not initially know who owned it, did not drive it to the site of the arrest, and did not know who did. Under these facts, we conclude that Foulkes had no expectation of privacy in the car or its contents at the time of the search.

█ Foulkes asserts, relying on *State v. Allen*, 93 Wn.2d 170, 606 P.2d 1235 (1980) and *State v. Goodman*, 42 Wn. App. 331, 711 P.2d 1057 (1985), *review denied*, 105 Wn.2d 1012 (1986), that his denial of ownership in the car did not eliminate standing. The authority relied on is distinguishable, since the applicability of the "automatic standing" rule in those cases rendered denial of a privacy interest irrelevant. *Allen*, at 172; *Goodman*, at 335. Nevertheless, we agree that one need not be the owner of a vehicle in order to have a legitimate expectation of privacy in it. *See United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980).

Here, Foulkes never asserted any privacy interest in the vehicle or its contents. He denied more than just ownership; he stated that he did not drive the vehicle to the place of his arrest, and that he did not know who did. The fact revealed during the suppression hearing that Foulkes knew the owner of the car does not indicate that Foulkes possessed a privacy interest in either the vehicle or its contents. The trial court did not err in ruling that Foulkes lacked standing to contest the search and seizure.

We next address Foulkes's assertion that the State is equitably estopped from asserting that he lacked standing to challenge the voluntariness of his consent to search the car. Foulkes contends that since the State sought his consent to search Elkins's car, the State should not be permitted to assert that he has no standing to challenge the voluntariness of his consent. The elements of equitable estoppel are: (1) an admission, statement, or act, inconsis-

tent with the claim afterward asserted; (2) action by another in reliance upon that act; and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or omission. *Shafer v. State*, 83 Wn.2d 618, 623, 521 P.2d 736 (1974); *Board of Regents v. Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987). Equitable estoppel will be applied against the State only when necessary to prevent a manifest injustice and the exercise of governmental powers will not be impaired. *Shafer*, at 622. Furthermore, equitable estoppel will not be applied to the State if its application will thwart the purpose of the laws or public policy. *State v. O'Connell*, 83 Wn.2d 797, 827, 523 P.2d 872, 77 A.L.R.3d 874 (1974).

▪ Here, Foulkes did not raise his equitable estoppel argument in the trial court, and it is not a "manifest error affecting a constitutional right" under RAP 2.5(a)(3). Therefore, we decline to entertain this argument on appeal.

▪ Lastly, we address whether not objecting to the detectives' statements alluding the second burglary allegedly committed by Foulkes deprived Foulkes of effective assistance of counsel. To establish that he was deprived of effective assistance of counsel, Foulkes must demonstrate that his counsel's performance was deficient, and that his counsel's deficient performance prejudiced his defense. *State v. Thomas*, 109 Wn.2d 222, 225, 743 P.2d 816 (1987); *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To meet his burden of showing prejudice, Foulkes must demonstrate the existence of a reasonable probability that the result of the proceedings would have been different if counsel had not made the professional errors. *Thomas*, at 226; *Strickland*, at 693.

Although both Detective Hasenwinkle and Detective Migita confused the September 17 burglary with the October 5 burglary, neither detective revealed that the second burglary he had in mind involved Foulkes. Nor does the testimony of the detectives taken as a whole imply that Foulkes was involved in the second burglary. Although Foulkes's counsel could have requested a curative instruc-

tion, his failure to do so (or decision not to do so) cannot be characterized as deficient performance under the facts of this case. Furthermore, there is no reasonable probability that the outcome of the trial would have been different had a curative instruction been given.

The judgment is affirmed.

BAKER and AGID, JJ., concur.