[No. 26645-4-I.  Division One.  March 1, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. LAURA MARIE JONES, *Defendant,* JOSEPH CINQ ADAMS, *Appellant.*

---

*Eric Broman* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Pamela Mohr, Deputy,* for respondent.

PEKELIS, J. — Joseph Adams appeals his conviction for possession of cocaine with intent to deliver. He contends that the trial court erred in failing to suppress evidence seized by police following a warrantless search and entry. We affirm.

On the night of January 1, 1990, four plainclothes officers were conducting a followup investigation of a drive-by shooting at an apartment in the city of Seattle. The officers entered a vacant ground-floor unit through a broken window. Laura Jones lived in the other ground-floor apartment of the 4-unit building. Jones' unit was directly across the hallway from the vacant unit.[1] The outside door to the ground-floor hallway was a locked door, although it was not affirmatively established that it was locked on the evening in question. The officers had not obtained the building owner's permission to enter the apartment on this occasion.

Once inside the vacant apartment, Officer Philip Hay discovered that the apartment door was slightly ajar and the doorknob was missing.[2] This permitted the officers to see into the ground-floor hallway. Because the door to Jones' apartment had been removed, the officers could also look directly into her apartment. From this vantage point, they

---

[1] The two other units of the apartment were upstairs. The record is unclear about whether anyone lived in the two upstairs apartments.

[2] Other than Jones, who briefly testified to her address and apartment number, Officer Hay was the only person who testified at the suppression hearing regarding the events in question.

observed activity in the apartment and the hallway for approximately 30 minutes.

Officer Hay observed the defendant, Joseph Adams, and a juvenile, Katrina Rainwater, seated in the living room watching television. After about 5 minutes, Officer Hay heard Adams say that he would get his gun if the people who shot into the apartment returned. Following this reference to a gun, the officers remained at the door and continued to peer into the apartment and hallway.

A short time later, the officer observed what he believed to be two consecutive drug transactions in the hallway. In each instance, Adams and Rainwater responded to a knock on the outside door to the apartment. For each transaction, Rainwater opened the door at Adams' behest, the person entered the hallway, and Adams accepted cash in exchange for a bag of what appeared to the officer to be rock cocaine.

After a brief period, the officers decided to leave the vacant apartment and "contact" the people in Jones' apartment. When Officer Hay attempted to open the door, he discovered that it was held shut by a rope tied to a table in the hallway. Officer Hay pulled the door very hard, dragging the table and pulling the door "half way off of its hinges."

Upon entering the hallway, Officer Hay saw Adams hand Jones a plastic bag containing what appeared to be rock cocaine. Jones rushed toward the interior of the apartment, and the officers followed her. Officer Hay testified that he believed Jones was going to dispose of the evidence. Jones dropped the bag on the kitchen floor. The officers seized the bag from the floor and arrested the three occupants.

The trial court denied Adams' motion to suppress evidence of the seized crack cocaine. Adams was found guilty of possession of cocaine with intent to deliver and sentenced within the standard range.

Adams appeals, challenging the judgment against him on the grounds that the trial judge should have excluded from evidence the cocaine seized in Jones' apartment at the time of the arrest. Before evaluating the asserted unconstitution-

ality of the police activity, we must first decide whether the police infringed Adams' legitimate expectation of privacy in Ms. Jones' apartment and the adjacent hallway. We hold that defendant failed to meet his burden to establish his own legitimate expectation of privacy in the searched areas.

Fourth Amendment rights are "personal rights" that may not be vicariously asserted. *State v. Foulkes*, 63 Wn. App. 643, 647, 821 P.2d 77 (1991) (citing *Rakas v. Illinois*, 439 U.S. 128, 133, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978)). Thus, to establish a Fourth Amendment violation, one must demonstrate a personal and legitimate expectation of privacy in the area searched or property seized. Without such a showing, a criminal defendant cannot benefit from the exclusionary rule's protections because one cannot invoke the Fourth Amendment rights of others. *United States v. Salvucci*, 448 U.S. 83, 86-87, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980).

The Supreme Court has abandoned a separate inquiry into a defendant's "standing" to contest an allegedly illegal search or seizure. *Rakas*, 439 U.S. at 138-40; *State v. White*, 40 Wn. App. 490, 494, 699 P.2d 239, *review denied*, 104 Wn.2d 1004 (1985). The inquiry, after *Rakas*, is simply whether the defendant's "substantive" Fourth Amendment rights were violated by the allegedly illegal search or seizure. The analysis now focuses on "the extent of a particular defendant's rights", which turns on a determination of whether, under the totality of the circumstances, the disputed search and seizure invaded the defendant's personally held legitimate expectation of privacy in the particular area searched. *Rakas*, at 139; *Salvucci*, at 92-93; *Smith v. Maryland*, 442 U.S. 735, 740, 61 L. Ed. 2d 220, 99 S. Ct. 2577 (1979).[3] Thus, a defendant seeking to suppress evidence on Fourth Amendment grounds

---

[3]Despite the Supreme Court's reluctance to characterize this inquiry in terms of standing, the term is still prevalent in many post-*Rakas* opinions as a shorthand designation for the "substantive" Fourth Amendment analysis of the personal nature of a defendant's privacy interest. *See United States v. Padilla*, 960 F.2d 854, 858 n.2 (9th Cir.), *cert. granted*, 113 S. Ct. 404 (1992); *Foulkes*, at 647.

"must in every instance first establish that he had a legitimate expectation of privacy in the place where the allegedly unlawful search occurred." *United States v. Freitas*, 716 F.2d 1216, 1220 (9th Cir. 1983).

In *Rakas*, the petitioners challenged a search of an automobile in which they were passengers. The searching officers discovered a box of rifle shells in the glove compartment and a sawed-off rifle under the front passenger seat. Affirming the denial of their motion to suppress, the Court held the fact that petitioners were " 'legitimately on [the] premises' in the sense that they were in the car with the permission of its owner" was legally insufficient to establish a violation of their personal Fourth Amendment rights. 439 U.S. at 142-43 & n.10, 148 (specifically disapproving *State v. Bresolin*, 13 Wn. App. 386, 534 P.2d 1394 (1975), *review denied*, 86 Wn.2d 1011 (1976)). The Court emphasized that petitioners had made no affirmative showing of any "legitimate expectation of privacy" in the areas searched. 439 U.S. at 148-49.

Similarly, in *Rawlings v. Kentucky*, 448 U.S. 98, 65 L. Ed. 2d 633, 100 S. Ct. 2556 (1980), the defendant placed illegal narcotics in the purse of his companion shortly before police officers searched the contents of the purse. The Court held that defendant had not made a sufficient showing of a legitimate expectation of privacy in the purse. He had no "right to exclude other persons from access to [the] purse"; he "had never sought or received access to her purse prior to that sudden bailment"; and "the precipitous nature of the transaction [of placing the drugs in the purse] hardly support[ed] a reasonable inference that petitioner took normal precautions to maintain his privacy." Moreover, the Court held that defendant's ownership of the seized drugs was by itself insufficient to establish a legitimate expectation of privacy. 448 U.S. at 105-06; *see also Salvucci*, at 91 ("legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest"); *accord, White*, 40 Wn. App. at 495.

█ Adams argues that this case involves no "standing" issue "*[b]ecause* he had a reasonable expectation of privacy in the hallway and the apartment". (Italics ours.) While Adams may be correct in terms of doctrinal semantics, his conclusion begs the constitutional question Adams must address, for it has been clear since *Rakas* that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." 439 U.S. at 131 n.1; *accord, Rawlings*, at 104; *United States v. $277,000.00 U.S. Currency*, 941 F.2d 898, 901 (9th Cir. 1991); *State v. White*, 97 Wn.2d 92, 110 n.9, 640 P.2d 1061 (1982).[4]

In this case, it is unclear what personal interest Adams had in the premises searched because he presented no evidence and made no attempt to prove his own expectation of privacy. Moreover, the record is devoid of facts that would permit a reasoned evaluation of what his privacy interests might be. There is no evidence that Jones specifically invited Adams into her apartment or customarily allowed him to come on the premises. At most, one can infer from his television watching that he was legitimately on the premises.

Legitimate presence, however, is not enough. Indeed courts have repeatedly rejected the "legitimately on the premises" rationale as a sufficient gauge for measurement of Fourth Amendment rights. *Rakas*, 439 U.S. at 142; *see also United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir. 1987) (mere presence at the place searched does not establish expectation of privacy); *United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991) (temporary access to premises does not establish requisite expectation of privacy); *United States v. Robinson*, 698 F.2d 448, 454-55 (D.C. Cir. 1983).

---

[4]*See also State v. Murray*, 110 Wn.2d 706, 714, 757 P.2d 487 (1988) (where record failed to set forth facts that would enable court to assess defendant's privacy interests in a searched house, defendant failed to meet factual burden of proving that evidence was obtained unlawfully); 1 J. Hall, *Search and Seizure* § 6:1, at 278 (2d ed. 1991) ("Standing is not assumed; it must be shown by the record.").

The burden is on the defendant to establish a subjective expectation of privacy. *United States v. McHugh*, 769 F.2d 860, 864 (1st Cir. 1985); *see also State v. Jessup*, 31 Wn. App. 304, 317-18, 641 P.2d 1185 (1982); *United States v. Osorio*, 949 F.2d 38, 41 (2d Cir. 1991) (where a guest does not establish a subjective expectation of privacy, court need not consider whether that expectation would be reasonable). At the suppression hearing, Adams simply presented no facts to demonstrate he had a subjective expectation of privacy concerning Jones' apartment and the hallway. Adams now urges that there are facts in the record that demonstrate his subjective expectation. We disagree. The record does not reveal that Adams knew or believed that the main hallway door was locked, the adjacent apartment was vacant, the upstairs apartments had no access to the hallway, or the door to the vacant apartment was secured. While each of the latter four facts may have been the case, and although such facts could conceivably serve to legitimize a person's claim to a subjective expectation of privacy, they are not of themselves manifestations of Adams' own actual (subjective) expectation of privacy in the searched premises.[5]

■ Moreover, even if Adams had satisfied his burden to demonstrate a subjective expectation, he would not prevail in this case since his claim to an expectation of privacy is not reasonable, *i.e.*, one "rooted in 'understandings that are recognized and permitted by society". *Minnesota v. Olson*, 495 U.S. 91, 100, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990) (quoting *Rakas*, 439 U.S. at 144 n.12). In general, the legitimacy of a guest's privacy claim is determined by "the totality

---

[5]The nature of Adams' pursuits — transacting his business with strangers in an apartment's common hallway — make it difficult to conclude even that Adams exhibited a subjective hope that no one would observe his unlawful pursuits. *Cf. Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *State v. Hastings*, 119 Wn.2d 229, 232-33, 830 P.2d 658 (1992) (using a home as a center for transacting unlawful business with the public is not a "private affair" protected by Const. art. 1, § 7).

of the circumstances". *E.g., United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991) (citing *Rakas*, at 152). Thus, in *Olson*, the Supreme Court held that, as an overnight guest, the petitioner had established an expectation of privacy "that society is prepared to recognize as 'reasonable . . .' ". *Olson*, at 95-96 (quoting *Katz*, at 361 (Harlan, J., concurring)). The lack of any right to exclude others or a key to the apartment did not determine the reasonableness of petitioner's expectation of privacy, because staying as an overnight guest in another's home involves "a longstanding social custom that serves functions recognized as valuable by society." *Olson*, at 98. Accordingly, the petitioner in *Olson* did affirmatively demonstrate that he was "*more* than just legitimately on the premises." 495 U.S. at 98. (Italics ours.)

If, on the other hand, testimony at the suppression hearing establishes nothing more than defendant's legitimate presence in an apartment with permission of the owner, the defendant fails to sustain his or her burden of showing an invasion of Fourth Amendment rights. *United States v. Hicks*, 978 F.2d 722, 724 (D.C. Cir. 1992); *see* 4 W. LaFave, *Search and Seizure* § 11.3(b) (2d ed. Supp. 1992) (the *Olson* holding does not cover a shorter-term guest). The circumstances of this case do not require us to broaden the scope of our inquiry beyond legitimate presence. There is no evidence that Adams was an overnight guest. Certainly the "particular areas" searched do not clearly give rise to a personal privacy expectation, *see Rakas*, at 148-49, because there is nothing particularly private about a living room or a hallway from which it would be reasonable to infer that a person's casual presence confers a constitutionally protected privacy interest therein. *See United States v. Burnett*, 890 F.2d 1233, 1237 (D.C. Cir. 1989) ("visitor's expectation of privacy is particularly tenuous in an apartment's common areas").

On two occasions Adams apparently decided who entered the hallway to purchase drugs. However, this activity hardly suffices to manifest a personal privacy interest in the apartment, because it is not premised on any claim to or apparent

"right" to exclude. *See Rawlings*, 448 U.S. at 111-13 (Black-
mun, J., concurring) (noting the "right to exclude" is a com-
ponent of an interest in property). Even if we infer that
Adams had permission to exercise a limited right to exclude
because he opened the door, we still conclude, under the
totality of the circumstances established by this record, that
his contact with the apartment was not demonstrably regu-
lar or personal enough to establish the objective reasonable-
ness of the privacy expectation he professes on appeal. *See
United States v. Garcia*, 741 F.2d 363, 366 (11th Cir. 1984)
(defendant failed to establish expectation of privacy despite
control of the premises and his use of the apartment by
appointment with the owner to conduct his cocaine trade).[6]

In sum, the scant facts presented on this record are
insufficient to persuade us that Adams demonstrated either
a subjectively held expectation of privacy in Jones' apart-
ment and hallway or, under the circumstances, the reason-
ableness of any such expectation. Furthermore, we reject his
additional contention that he has "automatic standing".

■ The United States Supreme Court expressly abolished
the federal constitutional doctrine of automatic standing.
*United States v. Salvucci*, 448 U.S. 83, 65 L. Ed. 2d 619, 100 S.
Ct. 2547 (1980). As originally designed, the doctrine conferred
Fourth Amendment standing upon a defendant charged with
a possessory offense, without requiring defendant to testify to
ownership or possession of the item seized or the place where
it was found. *See generally* 4 W. LaFave § 11.3(g). After *Rakas*
abrogated the concept of Fourth Amendment standing, "auto-
matic standing" represented an *exception* to the ordinary
inquiry into whether an individual has a legitimate expecta-
tion of privacy. *See State v. Zakel*, 119 Wn.2d 563, 571, 834
P.2d 1046 (1992) (citing *Rakas*).

---

[6]Moreover, in determining whether an expectation of privacy is one " 'society
is prepared to recognize as reasonable,' ", a guest who treats his host's apart-
ment as a base for business operations, welcoming strangers who come to pur-
chase drugs, is not using the apartment as a "sanctuary from outsiders". *Hicks*,
978 F.2d at 723-24 (quoting *Olson*, 495 U.S. at 97).

The Supreme Court designed the automatic standing rule to avoid a "constitutional dilemma" of forcing a defendant charged with a possessory crime to choose between preserving his or her Fifth Amendment self-incrimination privilege or invoking Fourth Amendment rights. 4 W. LaFave § 11.3(g), at 346. Without the doctrine, a defendant at a suppression hearing would be discouraged from testifying that he owned or possessed contraband, or the premises in which they were found, because such testimony could be used against him at the subsequent trial to prove possession as an element of the substantive crime. *See Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960). However, in *Simmons v. United States*, 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968), the Court held that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. Because automatic standing was unnecessary once the potential burden of self-incrimination no longer existed, the *Salvucci* Court abolished it and overruled *Jones*.

In *Salvucci*, however, the Court declined to decide whether the prosecution could still use a defendant's suppression testimony to impeach contradictory testimony at trial. 448 U.S. at 93-94 & n.8.[7] The risk that suppression testimony could still be used to incriminate a defendant, "albeit under the guise of impeachment", prompted four Justices of the Washington State Supreme Court to interpret the state constitution's privacy clause to confer automatic standing. *State v. Simpson*, 95 Wn.2d 170, 177-81, 622 P.2d 1199 (1980).

However, in *State v. Zakel*, 61 Wn. App. 805, 812 P.2d 512 (1991), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992), Division

---

[7] *Cf. United States v. Havens*, 446 U.S. 620, 64 L. Ed. 2d 559, 100 S. Ct. 1912 (1980) (illegally obtained evidence, which is inadmissible on the government's direct case as substantive evidence of guilt, is nevertheless admissible for purposes of impeachment); *accord, State v. Greve*, 67 Wn. App. 166, 834 P.2d 656 (1992) (state constitution does not prohibit the use of suppressed evidence for impeachment; its introduction discourages a defendant from perjuring himself directly, thus furthering the goal of preserving the dignity of the judicial process).

Two declined to apply automatic standing, observing that the rationale of the *Simpson* plurality is not binding precedent. 61 Wn. App. at 808-09 (citing *Green v. Seattle*, 146 Wash. 27, 30-31, 261 P. 643 (1927)).[8] On review, the Supreme Court declined to decide the validity of automatic standing, instead determining factually that the defendant was not entitled to it. 119 Wn.2d at 569-70. The court further held that the Court of Appeals had unnecessarily addressed the issue of automatic standing under the state constitution. 119 Wn.2d at 570. Five Justices separately concurred to emphasize their disinclination to express any opinion on *Simpson*'s binding effect. 119 Wn.2d at 572 (Guy, J., concurring).

Given this history, we conclude there is no authority in Washington binding this court to apply automatic standing as a matter of state constitutional law. Moreover, Adams' cursory reliance on *State v. Simpson, supra,* is not a substitute for a reasoned argument explaining why our state constitution compels retention of automatic standing. His passing treatment of the issue is therefore insufficient to merit judicial consideration.[9] *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992); *State v. Motherwell*, 114 Wn.2d 353, 368-69, 788 P.2d 1066 (1990).

We conclude that Adams cannot challenge the warrantless search and entry of Jones' apartment. He failed to establish a reasonable expectation of privacy in the premises or to adequately argue a basis for the "automatic standing" exception under the state constitution. Accordingly, we need

---

[8]The *Simpson* plurality claimed that the Washington Supreme Court had previously adopted automatic standing as a state constitutional doctrine in *State v. Michaels*, 60 Wn.2d 638, 644-47, 374 P.2d 989 (1962). *See* 95 Wn.2d at 179; *accord, State v. Belieu*, 50 Wn. App. 834, 838, 751 P.2d 321 (1988), *rev'd on other grounds*, 112 Wn.2d 587, 773 P.2d 46 (1989). The *Michaels* opinion clearly does not, however, develop independent state constitutional grounds for its decision; indeed, it merely recites the rationale of *Jones v. United States, supra.*

[9]Counsel for Adams was aware of the Court of Appeals decision in *Zakel* declining to recognize automatic standing. Brief of Appellant, at 41. In these circumstances, counsel was obliged to do more than merely assume the validity of automatic standing. He did not, however, submit a *Gunwall* brief. *See State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

not reach the question of whether the search was justified or whether exigent circumstances excused the forced entry without a search warrant.

Affirmed.

FORREST and BAKER, JJ., concur.

Review denied at 122 Wn.2d 1018 (1993).