[No. 13221-8-III.   Division Three.   April 11, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE DIAZ HERNANDEZ GONZALEZ, *Appellant*.

480

*Richard A. Smith* and *Smith & Scott,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Bruce Hanify, Deputy,* for respondent.

SCHULTHEIS, J. — After jury trial, Jose Gonzalez was convicted of one count of delivery of cocaine. He contends the court erred in declining to suppress certain evidence and that the prosecutor engaged in improper argument. We agree with the first contention and reverse.

The Yakima City Police suspected Guadalupe Velasco of being active in the drug trade. Detective Michael Merryman attempted to arrange a purchase from her using a paid informant, James Ancira. On November 30, 1992, Mr. Ancira went to Ms. Velasco's apartment where he negotiated a 1-ounce transaction. The cocaine was not on the premises at the time. After Mr. Ancira's arrival, Ms. Velasco obtained it from an unknown source and brought it back to her apart-

ment where the sale was completed. Mr. Ancira told Ms. Velasco he would be interested in a substantially larger purchase in the near future and they discussed kilogram quantities and prices. No firm arrangements were made at that time. On December 2, Mr. Ancira phoned Ms. Velasco and indicated he was ready to purchase 2 kilos. They discussed price and agreed to meet later in the week. They still did not have a firm arrangement, but merely an agreement to negotiate further. On December 3, Detective Merryman secured a search warrant and an intercept order. Mr. Ancira returned to Ms. Velasco's apartment on December 5, wearing a body wire. A vehicle arrived carrying Jose Gonzalez and Ociel Valente. They discussed the proposed sale with Mr. Ancira and then left to retrieve the cocaine. When they returned, the police executed the search warrant and placed Mr. Gonzalez and Mr. Valente under arrest. Mr. Valente turned State's evidence in exchange for favorable treatment.

Mr. Gonzalez urges that: (1) any criminal conduct on his part was still inchoate when the search warrant affidavit was prepared; (2) the police had no reason to believe cocaine would be found at Ms. Velasco's apartment until after the warrant was obtained; (3) Detective Merryman misled the issuing magistrate by leaving the impression the cocaine purchased on November 30, 1992, was stored in Ms. Velasco's residence when in fact it was obtained from an unknown source after Mr. Ancira's arrival and then brought to the apartment; (4) the search warrant is an illegal "conditional warrant" in that the existence of probable cause depends upon the occurrence of future events; and (5) the body wire application is defective because it contains no recital of facts supporting Mr. Ancira's reliability. The trial court found as follows:

> That the application for the intercept was more detailed on the buy that occurred, the offer for subsequent purchases and prices for kilograms of cocaine — but it included less detail on the named informant's track record.

The issue which this finding raises is whether, when an affidavit in support of a search warrant is weak on showing

the basis of a confidential informant's (CI's) knowledge but adequately establishes reliability, and an application for an intercept order is weak on showing the CI's reliability but adequately establishes the basis of his knowledge, the combined strength of the two documents saves both the warrant and the intercept order. If so, both are beyond challenge. If not, both are in trouble, assuming Mr. Gonzalez has standing to challenge the warrant. The parties cite no case law on direct point and we have found none.

At least one court has held that evidence extrinsic to an affidavit may be relied upon by virtue of CrR 2.3(c). *State v. Jansen*, 15 Wn. App. 348, 350-51, 549 P.2d 32, *review denied*, 87 Wn.2d 1015 (1976). CrR 2.3(c) requires the issuing court to "record a summary of any additional evidence on which it relies." This was not done.

█ The trial court found no misstatement of fact occurred. There are no affirmative misrepresentations but there is an omission which renders the inferences one would logically draw from the affidavit untrue. The affiant left the impression his information was not stale because the CI observed cocaine in the residence within the preceding 72 hours. In light of the fact that the cocaine was not stored at the residence, but obtained elsewhere, the information is misleading. There was no cocaine for sale at the apartment when Mr. Ancira arrived on November 30. There was no cocaine for sale there when he left. The affiant knew this, yet failed to disclose it to the magistrate. *See State v. Garrison*, 118 Wn.2d 870, 872, 827 P.2d 1388 (1992) (omission must be result of deliberate withholding of information; negligence not sufficient).[1] Any neutral observer reading the affidavit

---

[1]*Garrison*, at 873, cautions against equating "materiality" with "intentionality". We attempt to avoid that error, although espousing the prohibition is easier than applying it. Here, the omitted information that the affiant knew there was no cocaine in the residence would not merely tend to negate probable cause, but vitiates it in its entirety. There must come a point when an appellate court can say as a matter of law that no reasonable finder of fact could fail to find deliberate conduct. If not, then the proper mode of proceeding would be to remand with directions to make specific findings explaining why the omission resulted from simple oversight.

would believe Ms. Velasco reached into her stash to make the sale. However, reading the application for the intercept together with the affidavit would reveal that the affiant did not believe the 2 kilos subject to the prospective sale were then at Ms. Velasco's apartment. Read together, the two documents are not seriously misleading. Read alone, the affidavit is.

■ An application for an intercept must establish the basis of a CI's knowledge and his reliability when probable cause is based on information provided by him. *State v. Lopez*, 70 Wn. App. 259, 263, 856 P.2d 390 (1993), *review denied*, 123 Wn.2d 1002 (1994). The trial court found the application for the intercept "included less detail on the named informant's track record" than did the search warrant affidavit. The application contains *no* detail on Mr. Ancira's track record other than the fact he was then working for the police on a proposed buy. If both the affidavit and the application are read together, the showing is adequate. If the intercept application must stand on its own, it does not satisfy *Lopez*.

The trial court preliminarily noted that if securing the warrant and the intercept order were temporally segregable events, each would have to stand or fall on the strength of its respective supporting materials, but if the events occurred simultaneously, the magistrate could rely on both documents. Detective Merryman testified he brought all materials relating to both the warrant and the intercept with him when contacting the magistrate. He presented the materials sequentially, obtaining the search warrant first. Ultimately, the trial court did not expressly rule on whether the affidavit and application could be viewed in conjunction, but addressed the warrant and intercept separately. The court was troubled by the observations that the events were sequential, that Mr. Ancira was identified by name in the application but only as a CI in the affidavit, and the lack of testimony from Detective Merryman that he had advised the magistrate of the connection between the two documents.

When a detective approaches a judge seeking both a warrant and an intercept order, and both refer to the same address and the same timeframe, an inference that both refer to the same investigation and the same players would not be unreasonable. There is no reflection in the record as required by CrR 2.3(c) that the magistrate relied on materials outside of the affidavit. It is equally plausible that he reviewed the affidavit and found probable cause because of the omitted information. There is simply no evidence from which such a determination could be made. The trial court did not err in addressing issuance of the warrant and the intercept separately, but did err in finding both sufficiently supported.

Mr. Gonzalez urges the warrant is an illegal conditional warrant. Washington apparently has yet to reach the question, but the general rule is that conditional, or anticipatory, warrants are not per se objectionable. *United States v. Garcia*, 882 F.2d 699, 702-04 (2d Cir.), *cert. denied sub nom. Grant v. United States*, 493 U.S. 943, 107 L. Ed. 2d 336, 110 S. Ct. 348 (1989); *People v. Sousa*, 18 Cal. App. 4th 549, 557-58, 22 Cal. Rptr. 2d 264, 270 (1993). An anticipatory warrant is "conditioned upon future events which, if fulfilled, would create probable cause[.]" *Garcia*, at 700. "[W]hen an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Garcia*, at 703-04. Although these facts present a classic example of when a conditional warrant might be appropriate, we need not reach the question because the subject warrant is not conditional. It is absolute on its face and gave police the right to immediately enter Ms. Velasco's apartment without the occurrence of a future event. As a practical matter, the police would not have done so prior to completion of the 2-kilo buy because they knew there was no cocaine on the premises at the time the warrant issued.

■ Mr. Gonzalez has standing to challenge the intercept order. He had a statutory right under RCW 9.73 to be free of interception absent compliance with RCW 9.73.090(2). His standing to challenge a search of Ms. Velasco's residence is more uncertain. Division One has now rejected the "automatic standing" rule which heretofore has conferred standing on anyone charged with a possessory crime. *State v. Carter*, 74 Wn. App. 320, 875 P.2d 1, *review granted*, 125 Wn.2d 1007 (1994); *see also State v. Jones*, 68 Wn. App. 843, 852-54, 845 P.2d 1358, *review denied*, 122 Wn.2d 1018 (1993). If Mr. Gonzalez does not enjoy automatic standing, it is incumbent upon him to show traditional Fourth Amendment standing by demonstrating a privacy interest in Ms. Velasco's residence both subjectively and objectively. *Jones*, at 850. Mr. Gonzalez was a transient guest intent on conducting business. *Jones*, at 852 n.6. At least five other individuals were present in addition to Mr. Gonzalez and Mr. Ancira. If Mr. Gonzalez has standing at all, it must be founded on the automatic standing doctrine.

The rationale of *Carter* is that automatic standing is no longer necessary after *United States v. Salvucci*, 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980). *Salvucci* observed that intervening case law held an accused's testimony given in a suppression hearing may not be used against him in the government's case in chief. *Salvucci*, at 88-90. The automatic standing rule was discarded as a matter of federal constitutional law. *Salvucci*, at 92-93. *Carter* noted that no Washington State Supreme Court decision after *Salvucci* endorsed the doctrine. *Carter*, at 325. Because automatic standing is not required as a matter of federal law, and because the appeal before it properly framed a state constitutional question, *Carter* examined the inquiry in light of article 1, section 9 of the state constitution and held the provision coextensive with the Fifth Amendment. *Carter*, at 328 (citing *State v. Earls*, 116 Wn.2d 364, 374-78, 805 P.2d 211 (1991)). If article 1, section 9 provides no greater protection than does its federal counterpart, it follows that automatic standing is no longer viable as a matter of state law either. *Carter*, at 329.

■ *Carter* is well analyzed and difficult to fault. However, the last time this division considered automatic standing, it felt bound by the plurality in *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980). *State v. Belieu*, 50 Wn. App. 834, 838, 751 P.2d 321 (1988), *rev'd on other grounds*, 112 Wn.2d 587, 773 P.2d 46 (1989). The Supreme Court recently mentioned the automatic standing issue in passing.

> Because the Defendant's challenge focuses primarily on the state constitution and the crime involved is a possessory offense, we must briefly address the "automatic standing" exception to the general rules stated above. A defendant has automatic standing to challenge a search or seizure if (1) the offense charged involves possession as an "essential" element of the offense; and (2) the defendant was in possession of the contraband at the time of the contested search or seizure.

*State v. Goucher*, 124 Wn.2d 778, 787, 881 P.2d 210 (1994) (citing *State v. Zakel*, 119 Wn.2d 563, 834 P.2d 1046 (1992)).

The opinion then cites *Carter* and *Johnson* and notes that "a majority of this court has not spoken" to the continuing vitality of *Simpson. Goucher*, at 788 n.1. Plurality opinions have only limited precedential weight and we are not bound by *Simpson. Zueger v. Public Hosp. Dist. 2*, 57 Wn. App. 584, 591, 789 P.2d 326 (1990). However, proper respect for the stare decisis value of our own opinions suggests we should continue to adhere to *Simpson.*

Because of the mode of disposition, there is no need to address Mr. Gonzalez' contentions relative to prosecutorial misconduct.

Reversed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied at 128 Wn.2d 1008 (1996).