[No. 24213-0-I. Division One. April 23, 1990.]

MARK A. ZUEGER, *Individually and as Administrator, Appellant*, v. PUBLIC HOSPITAL DISTRICT No. 2 OF SNOHOMISH COUNTY, ET AL, *Defendants*, J. DANIEL TIMMONS, *Respondent*.

*William F. Nelson, Timothy Ford, Katrin Frank,* and *MacDonald, Hoague & Bayless,* for appellant.

*John Patrick Cook, Duncan Fobes,* and *Lee, Smart, Cook, Martin & Patterson, P.S., Inc.,* for respondent.

GROSSE, A.C.J.—Mark Zueger, individually and as administrator of the estate of Michele Zueger, his deceased wife, appeals the judgment dismissing this medical malpractice action alleging the wrongful death of Michele. He argues the trial court erred in admitting testimony of a pathologist regarding an autopsy and in refusing to submit an instruction to the jury on the "loss of chance of survival". We affirm.

This case began when Michele Zueger was admitted to Stevens Memorial Hospital with bilateral pneumonia and adult respiratory distress syndrome (ARDS) on March 5.

She was treated in the intensive care unit first by Dr. Rieger and then Dr. Kruger, who placed her on a ventilator. On March 6, Michele had an incomplete spontaneous abortion, but did not pass the placenta. Dr. Timmons, a gynecologist at Stevens, was called to provide gynecological care for Michele. He did not do a pelvic examination and put off a dilation and curettage (D&C) procedure until March 9, when Dr. Kruger requested Dr. Timmons proceed because Michele had developed a condition called disseminated intravascular coagulation (DIC). In the afternoon, Dr. Timmons performed the D&C but antibiotic treatment for infection was delayed until almost 7 p.m. Later that evening Michele suffered a tension pneumothorax[1] and died at approximately 2:30 a.m. on March 10. An autopsy was performed at Stevens Hospital with the consent of Mr. Zueger. His consent to the autopsy was for therapeutic and educational purposes only.

Five medical experts testified to Michele's medical condition during her hospitalization and the cause of her death. While they all agreed that the decedent died as result of a pneumothorax, Dr. Buchanan, an expert witness for the plaintiff, testified that the failure to timely perform a D&C was a contributing factor in Michele's death. The experts disagreed about the survival rates of a person with ARDS. The defense witnesses asserted a 50 to 67 percent chance of *not* surviving and the plaintiff's witness stated that it was more likely than not that persons with ARDS recovered from the illness if treated properly.

The trial court refused to submit plaintiff's requested instructions on a loss of a chance of survival and instead

---

[1]*Stedman's Medical Dictionary* defines a pneumothorax as: "The presence of air or gas in the pleural cavity." A tension pneumothorax is specifically defined as: "[Pneumothorax] in which a valve effect in the ruptured bleb or alveolar tissue permits air to enter the [pleural] cavity during inspiration, but traps it during expiration, so that pressure builds up, displaces the mediastinum to the opposite side, and encroaches upon and distorts blood vessels." *Stedman's Medical Dictionary* 1267 (21st ed. 1970). A pneumothorax is commonly known as a collapsed lung.

used two standard proximate cause instructions.[2] In a special verdict, the jury found that Dr. Timmons was negligent in his care of Michele, but that his negligence was not the proximate cause of her death. The complaint was dismissed with prejudice and the trial court issued a judgment on verdict in favor of Dr. Timmons.

The trial court admitted the autopsy testimony holding that no privilege or confidentiality attached to the conclusions of Dr. Sarewitz, the staff pathologist who performed the autopsy. Appellant argues that the legislative policy of RCW 68.50.105, regarding the confidentiality of autopsy reports, was violated when Dr. Sarewitz was allowed to testify about the autopsy he performed on Michele. RCW 68.50.105 provides in part:

> Reports and records of autopsies or post mortems shall be confidential, except that the following persons may examine and obtain copies of any such report or record: The personal representative of the decedent as defined in RCW 11.02.005, any family member, the attending physician, the prosecuting

---

[2]The trial court refused to instruct the jury on "loss of chance" because it found the doctrine not applicable to this case.

The respondent argues the appellant failed to properly preserve the second issue for review because (1) he did not comply with RAP 10.3(g) which requires a separate assignment of error for each instruction a party contends was improperly refused, and (2) he did not object at trial to the court's ruling on instruction 9 on proximate cause. Although the appellant did not comply with RAP 10.3, RAP 1.2(a) calls for a liberal interpretation of the rules and allows review on the substantive issue to promote justice. A review of the issue on the merits is warranted here since the issue is not whether a specific instruction was refused, but whether any *Herskovits* instruction should have been given. *Herskovits v. Group Health Coop. of Puget Sound*, 99 Wn.2d 609, 664 P.2d 474 (1983).

On the second procedural issue, while the appellant did not object to the specific instruction on proximate cause, the error assigned by the appellant was that no instruction on loss of a chance of survival was given, rather than whether instruction 9 should have been given. The purpose of the rule requiring an exception is to allow the trial court the opportunity to correct an error if necessary and prevent the unnecessary expense of a second trial. *Couch v. Mine Safety Appliances Co.*, 107 Wn.2d 232, 244-45, 728 P.2d 585 (1986). Because the appellant did except to the trial court's failure to give any of the proposed instructions, and the trial court was aware of and considered the objections when no instruction was given on the loss of a chance of survival, the issue was properly preserved for appeal.

attorney or law enforcement agencies having jurisdiction, public health officials, or to the department of labor and industries in cases in which it has an interest under RCW 68.50.103.

While an autopsy report is confidential under the statute, a trial court retains the discretion to admit a report. *State v. Thompson,* 54 Wn.2d 100, 338 P.2d 319 (1959). In construing the predecessor statute to RCW 68.50.105, the *Thompson* court refused to equate the statute's term "confidential" with the term "privileged" and held that an autopsy report was not privileged. It is incongruous then to argue that admission of the oral testimony of the pathologist violates the policy of the statute when the autopsy report itself is not beyond the reach of the court. We believe that *Thompson* controls and that the trial court properly held the pathologist's testimony was not privileged.

█ Even if the testimony was privileged, appellant waived any physician–patient privilege 90 days after filing this wrongful death action. RCW 5.60.060(4). That statute reads in relevant part:

> [A] physician . . . shall not, without the consent of his or her patient, be examined in a civil action as to any information acquired in attending such patient, which was necessary to enable him or her to prescribe or act for the patient, except as follows:
>
> . . . .
>
> (b) Ninety days after filing an action for . . . wrongful death, the claimant shall be deemed to waive the physician–patient privilege. Waiver of the physician–patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions . . . ..

By filing this wrongful death action and placing the cause of his wife's death in issue at trial, appellant waived any physician–patient privilege.

The remaining issue is whether the trial court erred when it did not apply *Herskovits v. Group Health Coop. of Puget Sound,* 99 Wn.2d 609, 664 P.2d 474 (1983) to this action and instruct the jury that even if it should find that Michele had a less than 50 percent chance of survival, if the

defendant's negligence reduced that chance of survival, her estate was entitled to recover for the loss.[3]

In *Herskovits,* a medical malpractice action arising from a misdiagnosis of cancer, the trial court granted summary judgment for the defendant. Both parties had stipulated for summary judgment that the decedent's chances of survival were less than 50 percent and that the defendant's actions reduced Mr. Herskovits' chance of survival from 37 percent to 25 percent. The trial court applied the traditional "but for" test and held the defendant's actions were not the proximate cause of the injuries since the patient probably would have died regardless of the defendant's actions. The Supreme Court reversed summary judgment employing two distinct theories to reach the same result. *Herskovits,* 99 Wn.2d at 613.

The lead opinion, written by Justice Dore, held that in situations where § 323 of the Restatement (Second) of Torts[4] applies, medical proof that the defendant's actions caused a reduction in survival mandates that the jury have the opportunity to resolve whether the conduct was a substantial factor in producing the decedent's injuries, rejecting the "but for" test to prove cause in fact. Accordingly, Justice Dore reversed summary judgment to place the issue of proximate cause before the jury. One Justice concurred.

---

[3]In a wrongful death action, prior to the *Herskovits* decision, if a party had a less than 50 percent chance of survival it was precluded from recovering from a negligent defendant. *Wooldridge v. Woolett,* 96 Wn.2d 659, 638 P.2d 566 (1981). For an overview of the theory of a "loss of a chance", *see generally Proving Causation in "Loss of a Chance" Cases: A Proportional Approach,* 34 Cath. U.L. Rev. 737 (1985); King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353 (1981).

[4] "One who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, . . .". Restatement (Second) of Torts § 323 (1965).

The plurality opinion, written by Justice Pearson, recognized a new actionable injury when a loss of less than even chance of survival occurs. Unlike the lead opinion, Justice Pearson retained the traditional "but for" test to prove cause in fact and reaffirmed that expert medical testimony must establish cause in fact beyond the balance of probabilities to prove cause in fact. He then shifted the focus of the inquiry by defining Herskovits' injury as a reduction in the chance of survival, rather than death. Thus, the plaintiff only needed to prove that but for the negligence the decedent would have survived longer. The court concluded:

> Therefore, I would hold that plaintiff has established a prima facie issue of proximate cause by producing testimony that defendant probably caused a substantial reduction in Mr. Herskovits' chance of survival.

*Herskovits,* 99 Wn.2d at 634. Three Justices concurred with Justice Pearson.

Justice Brachtenbach, in dissent, wrote that summary judgment was appropriate because the plaintiff failed to show evidence sufficient to prove the defendant's actions were the proximate cause of Herskovits' injuries. He flatly refused to adopt the substantial factor test of the lead opinion, asserting that such a test was limited to situations in which two coequal causes produce a party's injuries. The dissent also rejected the plurality's creation of a new actionable injury; that is, the loss of a chance of survival, and concluded that the evidence on the reduction in loss of life based on percentages is speculative and insufficient, without more, to prove proximate cause. One Justice concurred with Justice Brachtenbach.

Justice Dolliver also dissented stating:

> It would be pure speculation, given these figures, for an expert, a jury, or anyone else to conclude the decedent would live more or less time within the 5–year period with or without the proper diagnosis.

*Herskovits,* 99 Wn.2d at 644. He found the analysis of *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971) more persuasive. The *Cooper* court rejected a rule in which a "substantial possibility" of

survival would sufficiently establish a jury question on the issue of proximate cause.

When no rationale for a decision of an appellate court receives a clear majority the holding of the court is the position taken by those concurring on the narrowest grounds. *Lakewood v. Plain Dealer Pub'g Co.,* 486 U.S. 750, 100 L. Ed. 2d 771, 108 S. Ct. 2138, 2148 n.9 (1988); *Southcenter Joint Venture v. National Democratic Policy Comm.,* 113 Wn.2d 413, 427–28, 780 P.2d 1282 (1989). Following this principle, if *Herskovits* stands for anything beyond its result, we believe the plurality represents the law on a loss of the chance of survival. The plurality would allow instructions on a loss of a chance of survival in this case only if the evidence shows (1) a substantial reduction in the chance of survival, and (2) the negligence of the defendant caused the reduction.

The trial court refused to instruct on a loss of a chance of survival for two reasons. First, the court thought the rule was limited to diseases with a statistical probability of survival over a period of time. Second, the court did not believe the evidence supported the instructions proposed. We do not need to reach the first reason as we agree with the trial court's second reason and affirm.

Based on the conflicting testimony of medical experts, appellant argued two distinct theories at trial. The first theory was that a pelvic infection caused by Dr. Timmons' negligence was a proximate cause of Michele's death. It is evident the jury was not persuaded by the evidence supporting this theory since, by special verdict, it found Dr. Timmons' negligence was not a proximate cause of Michele Zueger's death. The second or alternative theory focused on the loss of a chance of survival rather than death and was premised on a finding that Michele had a less than 50 percent chance of survival and that Dr. Timmons' negligence decreased this chance. Plaintiff is entitled to have the trial court instruct the jury on his theory of the case if there is substantial evidence to support it. *See Lundberg v. All–Pure Chem. Co.,* 55 Wn. App. 181, 187, 777 P.2d 15, *review*

*denied,* 113 Wn.2d 1030 (1989). However, after reviewing the medical evidence presented at trial, we hold the plaintiff failed to produce evidence sufficient to require the court to instruct on a loss of a chance of survival.

The medical evidence at trial was conflicting. Dr. Timmons testified about the medical care he provided to the decedent and the medical decisions he made in providing such care. Although Dr. Timmons testified that a risk existed that an infection could develop in the placenta if no D&C procedure was completed, his testimony did not show that the decedent's chance of survival was reduced because the D&C was not done until March 9. In sum, his testimony was that he was justified in delaying the D&C and that Michele died from pneumonia, not a pelvic infection.

Doctor Sarewitz, the staff pathologist who performed the autopsy and examined the aborted fetus, testified that he found no evidence of infection in the aborted fetus nor evidence of a pelvic infection during the autopsy of Michele. He stated that the cause of death was "adult respiratory distress syndrome secondary to severe bilateral pneumonia with sepsis". Nothing in his testimony demonstrates that the defendant's actions reduced the decedent's chance of survival.

Both Dr. Blair, a pulmonary specialist and treating physician, and Dr. Ralph, a pulmonary specialist and full–time faculty member of the University of Washington, testified that there was no medical probability that a pelvic infection caused or contributed to Michele's death. They both agreed the pneumothorax was the cause of death and that generally over 50 percent of ARDS patients die from the illness. Dr. Blair testified Michele had a 50–50 chance of survival when she was admitted to the hospital, but that she was at a more than 50 percent risk toward the end of her treatment because she required ventilator therapy. Dr. Ralph testified that when a patient has factors, including pneumonia in more than one part of the lung, bacteria in the bloodstream, and a low white blood cell count, the patient's chance of dying from pneumonia is increased,

even if treated properly. He stated that because Michele presented these condition at admission her risk was higher than the general ARDS mortality rate of 50 to 60 percent.

The critical medical expert for the plaintiff was Dr. Buchanan, a pulmonary specialist. His testimony can be summarized as follows:

The evidence suggested Michele developed a pelvic infection that was a contributing factor in her death.

It was more likely than not that she would recover.

Michele's likelihood of survival was greater on March 6 than on March 5, and greater on March 7 than March 6.

Michele was at greater risk as a surgical patient on March 9, when the D&C was performed, than on March 6.

At the time Michele suffered the pneumothorax, she was not a long–term survivor, even if she did not have the pneumothorax.

The pneumothorax was the terminal event.

A change in Michele's oxygen concentration showed that she was getting better. Her condition improved and then worsened.

Delay in removing the dead product of conception was a contributing factor in her death.

Thus, while all of the medical doctors acknowledged that Michele died because of a pneumothorax, only Dr. Buchanan thought the delay in performing the D&C was a contributing factor in her death. In addition, he presented the only testimony on the issue of whether Dr. Timmons' negligence caused a reduction in Michele's chance of survival, as follows:

Q. [Defense Counsel] Now they did do the D and C on March 9th?
A. That is correct.

Q. Can you tell us whether or not she was at greater or less risk as a surgical patient to have a D and C on March 9th than she was on March 6th?

A. She was at greater risk on the 9th.

Q. And why was she at greater risk?

A. Because she was sicker.

Q. And in what regard was she sicker?

A. She was harder to oxygenate, she had some of the manifestations of DIC, she was developing an ARDS picture, she was just more critically ill.

While Dr. Buchanan asserted that Michele was at a greater risk for the surgery, he does not directly state that not performing the D&C reduced her chance of survival, nor that the reduction in her chance of survival was substantial, nor what that reduction might have been. The medical testimony on an increased risk was minimal at best. We hold that appellant failed to produce sufficient evidence to support the first part of the *Herskovits* test that there was a substantial reduction in the chance of survival. Thus the trial court was under no obligation to instruct the jury on this theory.

The trial court is affirmed.

WEBSTER and WINSOR, JJ., concur.