[No. 14048-2-III. Division Three. May 7, 1996.]

THE STATE OF WASHINGTON, *Appellant*, v. KEVIN JEREMY BOOT, *Respondent*.

*James R. Sweetser, Prosecuting Attorney*, and *Mary Ann Brady, Deputy*, for appellant.

*John H. Whaley of Spokane Public Defender's Office*, for respondent.

SWEENEY, C.J. — ■ Fourth Amendment rights are personal. *State v. Jones*, 68 Wn. App. 843, 847, 845 P.2d 1358, *review denied*, 122 Wn.2d 1018 (1993). They may be enforced "only at the instance of one whose own protection was infringed by the search and seizure." ' " *State v. Simpson*, 95 Wn.2d 170, 174, 622 P.2d 1199 (1980) (quoting *Rakas v. Illinois*, 439 U.S. 128, 138, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)). Kevin J. Boot was in the basement of a Spokane residence when two police officers entered to investigate a juvenile drinking party. Two juveniles told

police that Mr. Boot had threatened them with a gun. Mr. Boot was charged with two counts of second degree assault. He moved to suppress the gun found in the basement and the testimony of the juveniles. The court granted the motion. The State appeals. We reverse.

## FACTS

Shortly after midnight on March 5, 1994, Deputies Matthew Lyons and Shane McClary were dispatched to a north Spokane neighborhood after receiving a radio report that shots had been fired. The officers approached the only house in the area with lights on.

Deputy McClary knocked on the door and identified himself. When the door opened, he smelled the odor of beer and saw juveniles with beer bottles. The deputies entered the residence. Their primary concern was that shots had been fired from the house.

Deputy McClary asked the juvenile who opened the front door who the owner of the house was. The juvenile shrugged his shoulders and gave only a vague answer. Deputy McClary asked three other juveniles who the owner of the house was. Amelia Contreras told the officers that her family owned the house.

For safety reasons, the officers tried to gather the eight juveniles present into the living room. Mr. Boot was in the basement. A few of the juveniles admitted they heard shots fired, but all denied the shots came from the house.

At some point, a man arrived at the house and said, "Who's the guy with the gun?" He told police that his girlfriend (one of the juveniles present) had called him and said she had been threatened. Police questioned the girlfriend. She told them Mr. Boot had threatened to kill her and had held a gun to her head. A second juvenile also told police that Mr. Boot had threatened her with a gun. The officers found a .22 caliber pistol next to the furnace in the basement.

Mr. Boot was charged with two counts of second degree

assault. He moved to suppress the gun and the testimony of the two juveniles. He argued the officers' entry was unlawful because they did not have consent nor were there exigent circumstances. Mr. Boot asserted he had standing to challenge the search and seizure because his right to privacy was impinged. The State argued Mr. Boot was merely a transient guest and could not assert a Fourth Amendment challenge.

The court granted the motion to suppress. It found that Mr. Boot was seized when the officer took control of him in the basement. Because he was lawfully present when the officers entered the residence, the court reasoned that Mr. Boot had a legitimate expectation of privacy. The court further held that Mr. Boot had automatic standing because the assault charge included proof of possession of the seized gun. The State appeals.

## AUTOMATIC STANDING

The State first argues that Mr. Boot lacked standing to challenge the search and seizure because the doctrine of automatic standing no longer applies in Washington.

The United States Supreme Court has abolished the federal constitutional doctrine of automatic standing. *United States v. Salvucci*, 448 U.S. 83, 96, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980); *Simpson*, 95 Wn.2d at 175. Whether the doctrine of automatic standing remains viable in Washington is unsettled.[1]

---

[1]In *Simpson*, a plurality of our Supreme Court adhered to the automatic standing rule as a matter of state constitutional law. Const. art. I, § 7; *Simpson*, 95 Wn.2d at 181. In *State v. Zakel*, 119 Wn.2d 563, 834 P.2d 1046 (1992), the Court refused to decide whether Washington would continue to recognize the automatic standing rule. In their concurrence, five justices indicated that the court was not reaching the issue of whether the automatic standing rule was viable under the state constitution. *Zakel*, 119 Wn.2d at 572 (Guy, J., concurring). Again, in *State v. Goucher*, 124 Wn.2d 778, 881 P.2d 210 (1994), the Court held it would not resolve the issue of whether the automatic standing exception applies. Recently, in *State v. Carter*, 74 Wn. App. 320, 875 P.2d 1 (1994), *aff'd*, 127 Wn.2d 836, 904 P.2d 290 (1995), Division One interpreted *Zakel* as support for the proposition that there is no binding state authority to apply the automatic standing doctrine. *Carter*, 127 Wn.2d at 845. But the Supreme Court again

██ But here we need not decide the question of automatic standing under our state constitution. In *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986), our Supreme Court set out six nonexclusive neutral criteria to be used in determining whether a provision of the Washington Constitution affords broader protection than its federal counterpart. Mr. Boot has not addressed the *Gunwall* factors and we accordingly decline to consider independent state constitutional grounds. *State v. Mierz*, 127 Wn.2d 460, 473 n.10, 901 P.2d 286 (1995) (failure to analyze *Gunwall* factors precluded review); *State v. Olivas*, 122 Wn.2d 73, 81-82, 856 P.2d 1076 (1993) (when counsel fails to thoroughly brief or discuss state constitutional grounds independently of federal constitutional grounds, Supreme Court has declined to consider state claim; " ' "naked castings into the constitutional sea are not sufficient to command judicial consideration and discussion" ' ").

### LEGITIMATE EXPECTATION OF PRIVACY

 The question presented then is whether Mr. Boot had a legitimate expectation of privacy at the residence under the Fourth Amendment. Mr. Boot asserts he was a temporary guest at the residence with a subjectively reasonable expectation of privacy.

A challenge to a search and seizure requires that the accused have a legitimate expectation of privacy in the place searched or the item seized. *Jones*, 68 Wn. App. at 847. That legitimate expectation of privacy exists if the "individual has manifested an actual, subjective expectation of privacy in the area searched or item seized and society recognizes the individual's expectation of privacy as reasonable." *State v. Gocken*, 71 Wn. App. 267, 279, 857 P.2d 1074 (1993), *review denied*, 123 Wn.2d 1024 (1994). The

---

declined to overrule *Simpson. Carter*, 127 Wn.2d at 850. Accordingly, we do not have clear guidance as to whether a defendant in Washington may claim automatic standing. *See State v. Gonzalez*, 77 Wn. App. 479, 486, 891 P.2d 743 (1995) (*Simpson* is not binding but "proper respect" for stare decisis suggests we should continue to adhere to it), *review denied*, 128 Wn.2d 1008 (1996).

burden is, however, on the defendant to establish the expectation of privacy. *Jones*, 68 Wn.2d at 847.

Presence alone is not sufficient. *Jones*, 68 Wn. App. at 849 (citing *Rakas*, 439 U.S. at 142; *United States v. Sweeting*, 933 F.2d 962, 964 (11th Cir. 1991) (temporary access does not establish requisite expectation of privacy); *United States v. Grandstaff*, 813 F.2d 1353, 1357 (9th Cir.) (presence does not establish expectation of privacy), *cert. denied*, 484 U.S. 837 (1987); *United States v. Robinson*, 698 F.2d 448, 454-55 (D.C. Cir. 1983) (defendant introduced no evidence to show how long he had been in the house, whether he had a key or the nature of his relationship to the owner)).

Mr. Boot concedes he must show more than a legitimate presence. He relies on *State v. Rodriguez*, 65 Wn. App. 409, 828 P.2d 636, *review denied*, 119 Wn.2d 1019 (1992). But in *Rodriquez*, it was undisputed that the defendant was a temporary overnight guest in his mother's apartment. The issue we addressed there was whether the defendant had a right to privacy in the bathroom, separate from the privacy right his mother enjoyed. *Rodriguez*, 65 Wn. App. at 414. Unlike Mr. Rodriquez, Mr. Boot was not a temporary or overnight guest in the Contreras home with the owner's permission. Police found Mr. Boot in the basement. The basement area did not give rise to a privacy expectation. *Jones*, 68 Wn. App. at 851. At most, Mr. Boot showed that he was casually on the premises. He has not established a legitimate subjective expectation of privacy. Therefore, Mr. Boot did not have standing to challenge the warrantless search and seizure.

The decision of the superior court is reversed.

Munson and Schultheis, JJ., concur.