[No. 15297-9-III. Division Three. September 9, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. KIMBERLY KAY COSS, *Appellant*.

---

*Susan M. Gasch*, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

SCHULTHEIS, A.C.J., — Kimberly Kay Coss was arrested for possession of a controlled substance after a vehicle in which she was a passenger was impounded and searched. Ms. Coss moved to suppress drugs and drug paraphernalia found under the passenger seat. The trial court, without determining whether Ms. Coss had standing, found that the impoundment was proper and denied her motion to suppress. Ms. Coss was convicted of one count of possession of a controlled substance pursuant to RCW 69.50-.401(d). She appeals.

On March 3, 1995, at approximately 1:30 a.m., Police Officer John W. Griffen stopped a vehicle driven by Mary Laposa because it had a cracked taillight. Two other individuals, including Ms. Coss, were passengers in Ms. Laposa's vehicle. Officer Griffen checked Ms. Laposa's driver's license and discovered that it was suspended. At that point, Officer Griffen decided to impound the vehicle rather than take the driver into custody. Officer Griffen testified that due to the crowded nature of the jail, the general policy of the Spokane Police Department was not to book individuals on misdemeanor offenses unless it involved driving under the influence. Therefore, in order for Officer Griffen to arrest Ms. Laposa based on her suspended license, he would have had to obtain an exception to the Spokane Police Department policy from a sergeant. Officer Griffen also testified that he did not believe he had a reasonable alternative to impoundment because the traffic stop occurred around 1:30 a.m.

After Officer Griffen impounded the vehicle, he conducted an inventory search. Officer Griffen found a black leather case under the front passenger's seat. He opened it and found a syringe, drug paraphernalia, and plastic baggies of a white powdered substance which field tested positive for methamphetamine. Since Ms. Coss was the occupant in the front passenger seat, Officer Griffen arrested

her. He advised her of her *Miranda*[1] rights. Ms. Coss then admitted that the drugs belonged to her.

Ms. Coss moved to suppress the evidence obtained during Officer Griffen's inventory search. The trial court found that the impoundment was proper and denied Ms. Coss's motion. Ms. Coss stipulated to the facts and submitted the case to the trial court on the record. The trial court found Ms. Coss guilty of one count of possession of a controlled substance.

■ On appeal, the State contends Ms. Coss does not have standing to challenge the impoundment and subsequent inventory search of Ms. Laposa's vehicle. As respondent, the State may raise the issue of Ms. Coss's standing for the first time on appeal.[2] *State v. Grundy*, 25 Wn. App. 411, 415-16, 607 P.2d 1235 (1980), *review denied*, 95 Wn.2d 1008 (1981). The State has asked us to reconsider *State v. Gonzalez*, 77 Wn. App. 479, 891 P.2d 743 (1995), *review denied*, 128 Wn.2d 1008 (1996), in which we held that automatic standing is still viable in this division. The State urges this court to follow Division One and Division Two and hold that automatic standing no longer exists in Washington. *State v. Carter*, 74 Wn. App. 320, 329, 875 P.2d 1 (1994), *aff'd*, 127 Wn.2d 836, 904 P.2d 290 (1995); *State v. Zakel*, 61 Wn. App. 805, 812 P.2d 512 (1991), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992).

■■ The automatic standing doctrine confers standing on anyone charged with a possessory crime, eliminating the requirement of showing a legitimate expectation of privacy before the defendant can challenge a search or seizure. *Carter*, 127 Wn.2d at 850. The doctrine was originally adopted to guard against the risk of self-incrimination by a defendant who would have to admit possession of seized evidence at a suppression hearing to

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966).

[2]At the suppression hearing, the trial court did not determine whether Ms. Coss had standing because the issue was inadequately briefed. The trial court also noted that the standing issue was not pivotal to its decision.

establish standing, then face use of the admission as proof of guilt at trial. *Id.* at 850. The United States Supreme Court abandoned the automatic standing doctrine as a matter of federal constitutional law in *United States v. Salvucci*, 448 U.S. 83, 92-93, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980), based on an earlier ruling that a defendant's pretrial testimony cannot be used as substantive evidence at trial. *Salvucci* declined to decide whether the defendant's suppression hearing testimony could later be used for impeachment purposes, however, and the Washington Supreme Court has not followed *Salvucci*.

In *State v. Michaels*, 60 Wn.2d 638, 644-47, 374 P.2d 989 (1962), the Washington Supreme Court held the state constitution confers automatic standing on defendants charged with an offense that has possession as an essential element, as long as the person is in possession at the time of the contested search or seizure. In *State v. Simpson*, 95 Wn.2d 170, 174-81, 622 P.2d 1199 (1980), the plurality thoroughly analyzed *Salvucci*, then declined to abandon the automatic standing rule in this state. The plurality discerned both a continuing policy basis and firm state constitutional grounds for adherence to the automatic standing rule, which it noted was already established under our state constitution and had served our state well for 17 years. *Simpson*, 95 Wn.2d at 181. In *Gonzalez*, 77 Wn. App. 479, we continued to adhere to the automatic standing rule in deference to *Simpson* and our own earlier decision in *State v. Belieu*, 50 Wn. App. 834, 838, 751 P.2d 321 (1988), *rev'd on other grounds*, 112 Wn.2d 587, 773 P.2d 46 (1989). We firmly believe automatic standing is still the law in the State of Washington. *Michaels* has not been overruled and the plurality opinion in *Simpson* has received the endorsement of the entire Washington Supreme Court.

In *Carter*, 74 Wn. App. at 328-29, Division One agreed with the analysis in *Salvucci* and decided the automatic standing doctrine is no longer necessary to protect a defendant's Fifth Amendment right against self-

incrimination. The court also decided that our state constitution provides no more protection in this area than the federal constitution. *Carter*, 74 Wn. App. at 329. Thus, concluding the doctrine is no longer viable as a matter of state law, the court held the defendant did not have automatic standing to challenge the warrantless, forcible entry into the motel room where she had allegedly sold cocaine. *Carter*, 74 Wn. App. at 328-29.

The Washington Supreme Court affirmed *Carter*, but in the process, it took issue with Division One's abandonment of the doctrine of automatic standing. The majority noted:

> Petitioner Carter's contention that she has automatic standing to challenge the warrantless entry into the motel room was rejected by the Court of Appeals, which chose not to follow this court's plurality decision in *Simpson*. We do not agree with the Court of Appeals entirely, but affirm its decision nevertheless.

*Carter*, 127 Wn.2d at 850. And,

> Petitioner Carter did have [automatic] standing to move for suppression of the evidence [because she was present in the room]. This is contrary to the conclusion reached by the Court of Appeals. However, we agree with the trial court that there were exigent circumstances justifying entry of the motel room by Seattle police officers without a warrant. Petitioner does not challenge this finding by the trial court, but relies instead upon the "automatic standing" issue. *We disagree with the conclusion of the Court of Appeals on that issue*, but, at the same time, affirm its decision for another reason.

*Carter*, 127 Wn.2d at 850-51 (emphasis added).

The minority recognized that the majority was affirming the automatic standing rule under the state constitution, and agreed that it should do so, stating:

> The bulk of the [majority] opinion is devoted to an analysis of an issue that the trial court did not confront, but which was pivotal to the Court of Appeals decision — whether Carter had standing to challenge the warrantless search. The major-

ity, noting our decision in *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980), eventually concludes, albeit somewhat grudgingly, *that under our state's constitution, article I, section 7, Carter had automatic standing to challenge the search and seizure, and that the Court of Appeals erred in upholding the trial court's denial of the suppression motion on the basis that she was without standing. That conclusion, with which I agree*, is then followed by . . . .

*Carter*, 127 Wn.2d at 851-52 (Alexander, J., dissenting) (emphasis added).

Thus, because she was charged with a possessory offense and was in possession of the contraband under her seat when the police impounded the automobile in which she was riding, Ms. Coss has automatic standing to challenge the seizure and search of Ms. Laposa's vehicle under *Michaels* and *Simpson*.

 Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution, all seizures must be reasonable. *State v. White*, 97 Wn.2d 92, 109-10, 640 P.2d 1061 (1982). Impoundment is a seizure because it involves the governmental taking of a vehicle into its exclusive custody. *State v. Reynoso*, 41 Wn. App. 113, 116, 702 P.2d 1222 (1985). The reasonableness of a particular impoundment must be determined from the facts of each case. *State v. Greenway*, 15 Wn. App. 216, 219, 547 P.2d 1231, *review denied*, 87 Wn.2d 1009 (1976). Three circumstances justify impounding a vehicle: (1) as evidence of a crime; (2) as part of the police "community caretaking function," if removal of the vehicle is necessary; and (3) as part of the police function of enforcing traffic regulations, if the driver has committed a traffic offense for which the Legislature has authorized impoundment. *Simpson*, 95 Wn.2d at 189.

At issue in this case is whether the impoundment of Ms. Laposa's vehicle, which was authorized by statute, was reasonable. *State v. Hill*, 68 Wn. App. 300, 305, 842 P.2d 996, *review denied*, 121 Wn.2d 1020 (1993); *Reynoso*, 41 Wn. App. at 119. The State contends that since Ms. La-

posa was operating the vehicle while her license was suspended, the police officer was justified in impounding the car pursuant to former RCW 46.20.435(1). That statute provided: "Upon determining that a person is operating a motor vehicle . . . with a suspended or revoked license in violation of RCW 46.20.342 or 46.20.420, a law enforcement officer may immediately impound the vehicle that the person is operating."[3]

In *Reynoso*, 41 Wn. App. at 119, this court found that the use of the word "may" in former RCW 46.20.435(1) suggests that police officers are to exercise discretion when deciding to impound a vehicle. "Discretion necessarily involves sound judgment based upon the particular facts and circumstances confronting the officer." *Id.* Further, it is clear that former RCW 46.20.435 was meant to prevent a continuing violation of RCW 46.20.021. *Id.* Accordingly, "[i]f a validly licensed driver is available to remove the vehicle, a reason to impound must be shown." *Id.* Officer Griffen never inquired whether one of Ms. Laposa's passengers had a valid driver's license and would be willing to remove the vehicle. Since the statute at issue was meant to prevent the continuing violation of driving with a suspended license, allowing one of Ms. Laposa's passengers to drive the vehicle would have accomplished that goal.

The trial court concluded that this alternative would have been equivalent to allowing Ms. Laposa to drive the vehicle once Officer Griffen was no longer present. There is no support for this allegation. Further, the record does not show that Officer Griffen even considered this alternative. Although an officer is not required to exhaust all possibilities, the officer must at least consider alternatives; attempt, if feasible, to obtain a name from the driver of someone in the vicinity who could move the vehicle; and

---

[3]This statute is now codified at RCW 46.55.113 and provides:
"[A] police officer may take custody of a vehicle and provide for its prompt removal to a place of safety under any of the following circumstances:
". . . .
"(7) Upon determining that a person is operating a motor vehicle . . . with a suspended or revoked license in violation of RCW 46.20.342 or 46.20.420."

then reasonably conclude from this deliberation that impoundment is proper. *State v. Hardman*, 17 Wn. App. 910, 914, 567 P.2d 238 (1977), *review denied*, 89 Wn.2d 1020 (1978). Officer Griffen's testimony at the suppression hearing reveals that he only considered arresting Ms. Laposa or impounding the vehicle. There is no evidence that Officer Griffen considered any other alternatives.

 It is clear from the record that a reasonable alternative to impoundment existed. A validly licensed passenger in Ms. Laposa's vehicle could have driven the vehicle from the traffic stop, thereby preventing a continued violation of RCW 46.20.021. This course of action would not be the equivalent of allowing Ms. Laposa to drive the vehicle. Accordingly, the impoundment was unreasonable and thus unlawful. There was no justification for the inventory search and the evidence should have been suppressed. *Reynoso*, 41 Wn. App. at 120 (citing *State v. Williams*, 102 Wn.2d 733, 742-43, 689 P.2d 1065 (1984); *Simpson*, 95 Wn.2d at 189-91; *State v. Houser*, 95 Wn.2d 143, 147-48, 622 P.2d 1218 (1980); *State v. Bales*, 15 Wn. App. 834, 836-37, 552 P.2d 688 (1976), *review denied*, 89 Wn.2d 1003 (1977)).

Reversed.

KURTZ, J., concurs.

BROWN, J. (dissenting) — I respectfully dissent. I believe we should affirm the trial court because Kimberly Kay Coss has not raised a privacy issue under article I, section 7 of the Washington State Constitution, and has neither automatic standing, nor standing based upon a legitimate expectation of privacy. Further, because she does not have standing, we need not address the impoundment issue, but because the majority has a different view, I also disagree with their analysis and conclusion that the impoundment was improper. I would affirm.

## ADDITIONAL FACTS

At the suppression hearing Ms. Coss did not respond to

the State's briefing and argument asserting she lacked standing to object to the evidence seized from Mary Laposa's car, as well as controlled substances discovered on her person at the scene and during the booking process. The trial court declined to decide the automatic standing issue, but did find Ms. Coss lacked a reasonable expectation of privacy as a passenger.

I do not know what the trial court meant by saying the issue was inadequately briefed and was not pivotal to its decision. I assume these remarks refer to the court's decision to find the impoundment proper under former RCW 46.20.435(1), and therefore, the standing issue made no difference to the outcome.

## ISSUES

Automatic standing is the threshold issue in this case. The State adequately briefed and gave notice of this issue both at the trial and appellate levels.

The other issues presented are: (1) whether Ms. Coss has standing based upon a legitimate expectation of privacy as a passenger in Ms. Laposa's car; and (2) whether the trial court erred in approving the inventory incidental to the impoundment.

## ANALYSIS

*Automatic standing.* The automatic standing rule developed as an exception to the general rule that Fourth Amendment rights are personal rights. *State v. Goucher*, 124 Wn.2d 778, 787, 881 P.2d 210 (1994). For example, Ms. Laposa had personal rights under the general rule because her car was impounded and she could claim a reasonable expectation of privacy in it, but Ms. Coss, a passenger, could not. Automatic standing evolved to protect persons such as Ms. Coss from the horns of the constitutional dilemma of having to choose between preserving her Fifth Amendment privilege against self-incrimination or invoking her Fourth Amendment rights. *State v. Carter*, 74 Wn. App. 320, 326, 875 P.2d 1 (1994), *aff'd*, 127 Wn.2d 836, 904

P.2d 290 (1995). Another view is that the rule "was intended to prevent the government from arguing at a suppression hearing that a defendant did not possess the substance and thus had no Fourth Amendment protected interests, and then contrarily asserting at trial that the defendant was guilty of possessing the substance." *Carter*, 127 Wn.2d at 843.

The automatic standing exception requires that: (1) possession be an essential element of the charged offense, and (2) the accused be in possession of the item seized or the place it was found. *Goucher*, 124 Wn.2d at 787. The instant case presents both elements of the automatic standing exception, as possession is an essential element of the offense charged, and the accused admitted possession of the contraband after its discovery following the inventory and its seizure. This situation differs from the problem described in *Goucher*, 124 Wn.2d at 788 n.1, and favors resolution of the automatic standing issue now.

The State asks us to reconsider *State v. Gonzalez*, 77 Wn. App. 479, 891 P.2d 743 (1995), *review denied*, 128 Wn.2d 1008 (1996), discard the automatic standing rule, follow Divisions One and Two of this court,[4] and also align ourselves with the current federal approach. *United States v. Salvucci*, 448 U.S. 83, 92-93, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980). In *Gonzalez*, this division adhered to automatic standing based, in part, on the plurality in *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980), and also to be consistent with our decision in *State v. Belieu*, 50 Wn. App. 834, 838, 751 P.2d 321 (1988), *rev'd on other grounds*, 112 Wn.2d 587, 773 P.2d 46 (1989).

Although Division One and Division Two have abandoned automatic standing, the Washington Supreme Court has not yet by a majority decided the continued vitality of the automatic standing rule. *Goucher*, 124 Wn.2d at 788 n.1. The majority infers that *Carter*, 127 Wn.2d at 850-51,

---

[4]*State v. Carter*, 74 Wn. App. 320, 329, 875 P.2d 1 (1994), *aff'd*, 127 Wn.2d 836, 904 P.2d 290 (1995); *State v. Zakel*, 61 Wn. App. 805, 812 P.2d 512 (1991), *aff'd*, 119 Wn.2d 563, 834 P.2d 1046 (1992).

supports the proposition that the automatic standing rule is resolved and good law in this State. I do not agree.

In *Carter*, 127 Wn.2d at 836, the Supreme Court determined Ms. Carter had no legitimate expectation of privacy and that exigent circumstances provided exceptional reasons justifying the search, no matter whether she had automatic standing. The court carefully avoided resolving the automatic standing issue, even though at one point appearing to conclude that Ms. Carter did have automatic standing to object, because the court recognized that under the facts this was a distinction without a difference because exigent circumstances required affirmance. The court flatly said: "[T]his is not the case for resolving the (automatic standing) question." *Carter*, 127 Wn.2d at 849.

The *Carter* Supreme Court majority, instead, thoroughly rejected Ms. Carter's argument that abrogating the automatic standing rule would prevent defendants from asserting their privacy interest because of the possibility that statements made at the suppression hearing would late be used to incriminate them through impeachment. *Carter*, 127 Wn.2d at 846. The Supreme Court also unequivocally rejected the notion that the automatic standing rule was necessary to deter illegal police behavior by concluding: "The trial court can determine whether a due process violation exists on a case-by-case basis in motions to suppress evidence under CrR 3.6." *Carter*, 127 Wn.2d at 847 (citations omitted). Indeed, in *Carter* the Supreme Court rejected each of Ms. Carter's contentions in its critical analysis of automatic standing at page 846 and at page 849 was merely "assuming" she had standing in order to emphasize that standing made no difference because exigent circumstances justified the search of the motel room without a warrant.

As this court observed in *Gonzalez*, "[p]lurality opinions have only limited precedential weight and we are not bound by *Simpson*." 77 Wn. App. at 486 (citing *Zueger v. Public Hosp. Dist. 2*, 57 Wn. App. 584, 591, 789 P.2d 326 (1990)). The narrowest construction of a plurality holding

should be given. Where there are dissimilar or peculiar facts, the principles of stare decisis do not require a broad application of a plurality rule.

Our desire in *Gonzalez* for consistency with our decision in *Belieu*, in view of the limited precedential value of *Simpson*, is outweighed by the logic that automatic standing is no longer necessary to protect a defendants' Fifth Amendment right against self-incrimination and that the Washington constitution provides no broader protection than the federal constitution. *State v. Carter*, 74 Wn. App. at 328-29. Furthermore, there is a need for consistent and uniform treatment of automatic standing issues in our courts. It is proper to reverse existing case law when it is incorrect or harmful. *State v. Ray*, 130 Wn.2d 673, 679, 926 P.2d 904 (1996). We should now reject automatic standing as articulated in *Belieu* and *Gonzalez*. Accordingly, Ms. Coss should not be accorded automatic standing. The doctrine should now be abandoned in favor of a legitimate expectation of privacy test.

A defendant does not have to risk self-incrimination under the Fifth Amendment or article I, section 9 of the Washington State Constitution by the substantive use of his or her statements made at pretrial CrR 3.5 and CrR 3.6 hearings. A defendant does not, however, have the unlimited right to lie under oath at a trial and avoid the use of suppressed evidence or statements made during pretrial hearings for impeachment purposes under the provisions of either the Fourth Amendment or article I, section 7 of the Washington State Constitution. *Carter*, 127 Wn.2d at 846; *State v. Greve*, 67 Wn. App. 166, 171-75, 834 P.2d 656 (1992), *review denied*, 121 Wn.2d 1005 (1993). The trial courts have the means to safeguard against any abuse of these principles by properly drafted limiting instructions. *State v. Lavaris*, 106 Wn.2d 340, 343-44, 721 P.2d 515 (1986). Abandoning automatic standing does not mean a defendant is foreclosed, however, from having any standing to raise Fourth Amendment suppression issues. There still may be a legitimate expectation of privacy.

*Standing based upon a legitimate expectation of privacy.* If the automatic standing exception is eliminated, Ms. Coss can still challenge the search of Ms. Laposa's vehicle under the Fourth Amendment if she has a legitimate expectation of privacy in the place where the evidence was seized, i.e., the vehicle. *State v. Boot,* 81 Wn. App. 546, 550, 915 P.2d 592 (1996). An accused must establish more than a legitimate presence. Under the Fourth Amendment, there must be both a subjective and objective expectation of privacy to be reasonable. *Carter,* 74 Wn. App. at 329-30. Ms. Coss has not established such an interest in the car driven by Ms. Laposa, and, therefore, does not have standing to challenge the search. The trial court's decision that Ms. Coss lacked a reasonable expectation of privacy in the vehicle was proper and should be affirmed.[5]

Because the majority concludes that Ms. Coss has standing, I will also assume standing to make clear that when there are independent state grounds for exception to state constitutional requirements that are coextensive with Fourth Amendment requirements or even provide greater protection under our constitution, the results would be the same.

*Impoundment and inventory.* When confronted with a warrantless search, we must first analyze an alleged violation under article I, section 7 of the Washington constitution, then under the Fourth Amendment. *State v. Hendrickson,* 129 Wn.2d 61, 69-71, 917 P.2d 563 (1996). Warrantless searches are per se unreasonable.[6] *Id.* An inventory pursuant to a lawful impoundment is a recognized exception to the general rule requiring a warrant. *Id.*

---

[5]Even Ms. Laposa has less expectation of privacy in her automobile than in her home or office. *State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). Inferentially, Ms. Coss has less legitimate expectation of privacy in the car than Ms. Laposa, as Ms. Coss has established no personal right in the car.

[6]Disturbing a person's private affairs without authority of law is contrary to article I, section 7 of the Washington State Constitution. The State constitution is at least coextensive with the federal constitution, so any warrantless search under the Fourth Amendment also implicates article I, section 7 of our Constitution.

The trial court concluded Officer Griffen properly exercised his discretion under former RCW 46.20.435(1) to impound and inventory Ms. Laposa's car. Inherent in this conclusion is the determination that the stop and inventory were without pretext. I agree. The statute provided: "Upon determining that a person is operating a motor vehicle. . . with a suspended or revoked license in violation of RCW 46.20.342 or 46.20.420, a law enforcement officer *may* immediately impound the vehicle that the person is operating." (Emphasis added.) The trial court had the benefit of observing the fact-witnesses on the need to impound the vehicle pursuant to former RCW 46.20.435(1). It resolved factual differences and determined witness credibility. This question is one of mixed law and fact. We are not in a position to reject the findings of the trial court that turning the car over to someone else when the defendant remained with the vehicle was the same as returning the car to Ms. Laposa once the officers were out of the way. *See* finding of fact IV. I would not disturb the trial court's findings on this fact issue when reviewing the reasonableness of the officer's decision to impound. *State v. Reynoso*, 41 Wn. App 113, 702 P.2d 1222 (1985).

Even if Ms. Coss had viable automatic standing or a legitimate expectation of privacy under the federal or state constitutions, or a claim of disturbance of her private affairs under article I, section 7, of the Washington State Constitution, there is an independent state ground to support the trial court's decision. Police under these circumstances have lawful discretion to conduct an inventory pursuant to the statutorily permitted impoundment. Former RCW 46.20.435(1). This police discretion was properly reviewed by the trial court. This process and result is consistent with *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980); *State v. Carter*, 74 Wn. App. 320, 875 P.2d 1 (1994), *aff'd*, 127 Wn.2d 836, 904 P.2d 290 (1995); and *Reynoso*, 41 Wn. App 113.

## CONCLUSION

With due respect to the majority, the doctrine of

automatic standing has limited precedential value in light of the plurality decision in *Simpson*. The doctrine has been criticized or abandoned by most of the courts which have examined the doctrine since its abandonment by the federal system which first gave it life. When a doctrine of law is incorrect or is no longer supported by the reasons which gave it life in the first place, or the doctrine promotes a harmful result, it should be discarded. *Ray*, 130 Wn.2d at 679. Thus, it is time for us to overrule *Gonzalez* and *Belieu*. It is time to confront and settle this court-created legal fiction of automatic standing. The issue of automatic standing is ready to be resolved as the problem noted in *Goucher* is satisfied by the facts of this case.

In my view, Ms. Coss has neither automatic standing, nor standing based upon a legitimate expectation of privacy. Additionally, the trial court correctly, but unnecessarily, held the inventory following impoundment was a proper exercise of police discretion under the independent state grounds of former RCW 46.20.435(1). However, the trial court and the majority should have held Ms. Coss did not have standing in the first place. I would affirm.

Review denied at 134 Wn.2d 1028 (1998).