Melnick, J.
¶49 (dissenting) — Because the facts of this case demonstrate that the officer acted lawfully and reasonably in impounding and searching Martha Froehlich’s vehicle, I respectfully dissent. I would reverse the trial court’s dismissal and reach Froehlich’s argument regarding the legality of the inventory search.
¶50 As relevant to this case, law enforcement may impound a vehicle under the community caretaking function or pursuant to statutory authority. State v. Tyler, 177 Wn.2d 690, 698, 302 P.3d 165 (2013). Under either situation, law enforcement can impound a vehicle only if no reasonable alternatives exist. Tyler, 177 Wn.2d at 698. “The police officer does not have to exhaust all possible alternatives, but must consider reasonable alternatives.” Tyler, 177 Wn.2d at 699. The “[reasonableness of an impoundment must be assessed in light of the facts of each case.” Tyler, 177 Wn.2d at 699.
*847 ¶51 Inventory searches on lawfully impounded vehicles are constitutional when police follow their procedures and do not use the search as a pretext for an evidentiary search. South Dakota v. Opperman, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976)[2] (inventory search after impound on illegally parked car upheld where personal items visible in car). Inventory searches are based on reasonableness and are to be distinguished from searches based on probable cause. Illinois v. Lafayette, 462 U.S. 640, 643, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983).
¶52 When done in good faith, the purposes of an inventory search are to find, list, and secure property and to protect law enforcement and storage bailees from dishonest claims of theft. State v. Houser, 95 Wn.2d 143, 154, 622 P.2d 1218 (1980). The scope of an inventory search is “limited to protecting against substantial risks to property.” Houser, 95 Wn.2d at 155.
I. Impound under Community Caretaking Function
¶53 The majority relies on the two part test in Tyler to arrive at its conclusion that the impound was improper. 177 Wn.2d at 698. The majority correctly states that the vehicle driven by Froehlich had to be moved under the “community caretaking function” because it had been abandoned, impeded traffic, threatened public safety, or a threat existed to the contents because of vandalism or theft.
¶54 I believe that the majority’s reliance on the second part, i.e., the defendant, the defendant’s spouse, or friends are not available to move the vehicle, is misplaced. The police are neither required to ask the driver, in the circumstance of this case, about the availability of someone else to remove the car nor are they required to call people who are not at the scene of the vehicle impound and wait for them to *848 respond. In Tyler, a deputy stopped the defendant for speeding and discovered his license was suspended. 177 Wn.2d at 694. The deputy arrested the defendant and allowed the passenger to try to find someone to drive the vehicle. Tyler, 177 Wn.2d at 695. No one was available and the deputy called a tow truck to impound the car based on road safety. Tyler, 177 Wn.2d at 696. While waiting for the tow truck, the deputy performed an inventory search, which our Supreme Court affirmed. Tyler, 177 Wn.2d at 696, 716.
¶55 Tyler relies heavily on Houser. In Houser, the vehicle was in the defendant’s possession and was not abandoned. 95 Wn.2d at 152. The police arrested him in his vehicle. Houser, 95 Wn.2d at 152. No evidence existed that it impeded traffic or that it could not have been driven to a place where it would not impede traffic. Houser, 95 Wn.2d at 152. The court held the impoundment of the vehicle was unreasonable and said, “It is unreasonable to impound a citizen’s vehicle following his or her arrest when there is no probable cause to seize the car and where a reasonable alternative to impoundment exists.” Houser, 95 Wn.2d at 153 (emphasis added). In Tyler, the court cited to this portion of Houser but said, “ [I] f there is no probable cause to seize the vehicle and a reasonable alternative to impoundment exists, then it is unreasonable to impound a citizen’s vehicle.” Tyler, 177 Wn.2d at 698. However, the validity of impoundment is not based on probable cause, it is based on reasonableness.[3]
¶56 Tyler and Houser are factually dissimilar from the present case. They both relied on the arrest of the driver. Here, Froehlich was not arrested or detained. She voluntarily left the scene after requesting an ambulance. She was not present when the trooper seized the vehicle.
¶57 In addition, the majority’s reliance on State v. Coss, 87 Wn. App. 891, 943 P.2d 1126 (1997), is misplaced based *849 on distinguishable facts. There, the driver had a suspended license; however, the passengers in the vehicle were not given the opportunity to drive the car from the scene. Coss, 87 Wn. App. at 899. In our case, Froehlich did not have passengers.
¶58 Rather, our case is more similar to State v. Peterson, 92 Wn. App. 899, 901, 964 P.2d 1231 (1998), where the driver was alone in the car. The officer did not arrest Peterson for driving with a suspended license, but did impound the vehicle. Peterson, 92 Wn. App. at 901. In distinguishing Coss, we held,
It was unreasonable for the officer to impound the vehicle in Coss without determining whether these passengers could legally have driven the car from the scene or safely made other arrangements for it. Here, the owner was not present to authorize a licensed and insured driver to remove the vehicle or to authorize leaving the vehicle by the side of the road. . . . The impoundment was the best approach to protect the police and the property owner and was reasonable under these circumstances.
Peterson, 92 Wn. App. at 903. Here, Froehlich, not the owner of the vehicle, voluntarily left the scene and was not present to authorize another person to move the vehicle. In addition, the uncontroverted evidence showed that the vehicle could only be removed with a tow truck and it presented a traffic hazard because it impeded the visibility of drivers approaching a very busy intersection and created a distraction. Leaving it at the scene was not a reasonable option.
¶59 I disagree with the majority’s characterization of Peterson. Although it did not involve the community care-taking function, we clearly decided the case on whether or not the police acted reasonably in impounding the vehicle and conducting an inventory search. See Peterson, 92 Wn. App. at 902-03. Whether or not the impound is based on the “community caretaking function” or a statute, the lawfulness of the impoundment will be upheld only if no reasonable alternatives exist. Tyler, 177 Wn.2d at 698-99.
*850 ¶60 Likewise, in State v. Ferguson, 131 Wn. App. 694, 698, 128 P.3d 1271 (2006), the trooper stopped the vehicle and determined the driver had a valid arrest warrant. The trooper would not allow the 17 year old passenger to drive the car because she could not produce identification and the trooper could not find a driver’s record for her. Ferguson, 131 Wn. App. at 698. The trooper did not attempt to contact the out-of-state owner of the vehicle. Ferguson, 131 Wn. App. at 698. He decided to impound the vehicle because it blocked an intersection and the registered owner was not present. Ferguson, 131 Wn. App. at 698. We upheld the subsequent inventory search. Ferguson, 131 Wn. App. at 697, 706.
¶61 The facts of this case demonstrate that Trooper Richardson acted reasonably. He arrived at the scene of an accident. He noted that Froehlich’s vehicle posed a traffic hazard, could not be operated, and could only be removed by a tow truck. Trooper Richardson observed valuables in plain view in the unsecured vehicle where both the sunroof and a window were open. Froehlich admitted the vehicle was not hers. She requested an ambulance so she could be assessed for injuries. Five minutes after the request, an ambulance arrived, and it took Froehlich from the scene.
¶62 As recognized by the majority, Richardson considered alternatives to impoundment. No one was present at the scene to take possession of the vehicle, and Froehlich did not indicate any alternatives existed. She expressed no concerns about the vehicle. It would not have been safe for a person to remove the vehicle without a tow truck.
¶63 Under these circumstances, it is clear that “the defendant, the defendant’s spouse, or friends [were] not available to move the vehicle.” Tyler, 177 Wn.2d at 698, and I would uphold the impoundment and inventory search. The majority, however, changes the test of Tyler to read the second requirement as “whether Froehlich, her spouse, or her friends were available to move the vehicle.” Majority at 839. Changing the law to put an affirmative duty on the *851 police to see if people are available to move the vehicle is without precedent and contrary to Tyler.[4]
II. Impound Pursuant to Statutory Authority
¶64 I would also uphold the impoundment and inventory search under RCW 46.55.113(2)(b) and (c). I agree with the majority’s interpretation that these provisions apply. I, again, part company with the majority because, for the reasons stated above, Trooper Richardson did consider reasonable alternatives to impoundment.
III. Conclusion
¶65 The majority’s holding that Trooper Richardson did not consider alternatives is incorrect. Rather, the majority seems to say that the only reasonable alternative was to ask Froehlich about arranging to have someone else remove the car. I respectfully dissent and would conclude that under the facts of this case, the police lawfully impounded the vehicle.

 Arguably Washington has dispensed with the portion of the test determining if law enforcement followed procedures. State v. Houser, 95 Wn.2d 143, 622 P.2d 1218 (1980). In this case, it does not matter since the trial court found that Trooper Richardson followed police procedures and nobody challenges that finding.

 In both Tyler and Houser, law enforcement had probable cause to arrest the drivers but no probable cause existed to search their vehicles.

 Assuming that the majority is correct that Tyler suggests an officer should consider whether Froehlich could make arrangements to remove the vehicle, it is clear that Richardson did make these considerations. The fact he did not ask her does not mean he did not consider the alternative. The fact he did not call the trooper who went to the hospital also does not mean he did not consider alternatives. It is unclear if the trooper remained with or had access to Froehlich at the hospital. Even if the trooper had such access, it would be unreasonable to have Richardson wait at the scene for an undetermined amount of time after Froehlich voluntarily abandoned the vehicle.